# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

ESTATE OF VINCENT B. FERRARA,
*Plaintiff*,

v.                                                          No. 3:18-cv-0527 (VAB)

UNITED PUBLIC SERVICE EMPLOYEES
UNION, KEVIN BOYLE, RONALD
SURACI, and CRAIG MANEMEIT,
*Defendants.*

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

On March 29, 2018, Vincent B. Ferrara filed a Complaint against the United Public

Services Employees Union ("UPSEU" or the "Union"), Kevin Boyle, Ronald Suraci, Craig

Manemeit, Robert DeCrosta, Edward Lennon, James Naccarato, Robert Brockett, and the Town

of East Haven. Compl., ECF No. 1 (Mar. 29, 2018). Mr. Ferrara subsequently passed away and

the Estate of Vincent B. Ferrara ("Plaintiff") was substituted as the plaintiff. Order, ECF No. 59

(Oct. 21, 2019).

On May 21, 2020, the Estate of Vincent B. Ferrara filed a stipulation of dismissal as to

Robert DeCrosta, Edward Lennon, James Naccarato, Robert Brockett, and the Town of East

Haven ("Police Defendants"). Stipulation of Dismissal, ECF No. 62 (May 21, 2020)

("Stipulation of Dismissal"). Only the United Public Service Employees Union, Kevin Boyle,

Ronald Suraci, and Craig Manemeit (together, "Defendants" or "Union Defendants") remain as

defendants.[1]

---

[1] Although Defendants' motion for summary judgment, Mot. for Summ. J., ECF No. 60 (Mar. 6, 2020) ("Defs.'
Mot."), and Plaintiff's opposition, Mot. to Renew Opp'n Mem. and Local Rule 56 Stmt. in Response to Defs.'
Renewed Mot. for Summ. J., ECF No. 61 (Mar. 10, 2020) ("Mot. to Renew"), still list Robert DeCrosta as a
defendant, the Stipulation of Dismissal, which specifically dismissed the action against Robert DeCrosta, supersedes
the earlier filings. *See Israel v. Carpenter,* 120 F.3d 361, 365 (2d Cir. 1997) ("[A] stipulation of dismissal with

Defendants now move for summary judgment. Defs.' Mot.

The Estate of Vincent B. Ferrara opposes the motion and renews its objections to a previous motion for summary judgment that was denied as moot in light of Mr. Ferrara's passing. *See* Mot. to Renew.

For the following reasons, Defendants' motion for summary judgment is **GRANTED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Mr. Ferrara[2] worked "as a Police Officer for the Town of East Haven." Defs.' Local Rule 56(a)(1) Statement of Facts ¶ 1, ECF No. 60-2 (Mar. 6, 2020) ("Defs.' SOF"); Pl.'s Local Rule 56(a)(2) Statement of Facts ¶ 1, ECF No. 48-1 (Apr. 2, 2019) ("Pl.'s SOF").

"United Public Service Employees Union is a labor organization with its principal place of business in Ronkonkoma, New York." Defs.' SOF ¶ 2. The "COPS Division" of the UPSEU ("UPSEU-COPS") "is located in Clinton, Connecticut." *Id.* ¶ 3.

"On June 25, 2015[,] by Decision No. 4818-A[,] the Connecticut State Board of Labor Relations certified UPSEU-COPS as the representative for purposes of collective bargaining by all full time permanent and uniformed members of the Town of East Haven Police Department." *Id.* ¶ 4.

Kevin Boyle is the president of UPSEU; Ronald Suraci is the Executive Director of UPSEU-COPS; Craig Manemeit is a Staff Attorney in the UPSEU-COPS Clinton, Connecticut

---

prejudice as to a pending action is unambiguous; like any such dismissal, it is deemed a final adjudication on the merits for *res judicata* purposes on the claims asserted or which could have been asserted in the suit . . . . Such a stipulation will (almost invariably) have preclusive effect notwithstanding a litigant's post hoc assertion that he intended to preserve certain claims.") (internal citations and quotation marks omitted).

[2] Throughout the Defendants' and Plaintiff's local rule statements, the parties refer to the "Plaintiff" when describing the events at issue. To avoid confusion, the Court will assume the parties are referring to the former plaintiff, Vincent B. Ferrara, rather than the current plaintiff, the Estate of Vincent B. Ferrara, in their local rule statements.

office; and Robert DeCrosta[3] is a Detective for the Town of East Haven Police Department and was the former President of the UPSEU-COPS, Local 0275. *Id.* ¶¶ 5–8.

On March 1, 2017, Mr. Ferrara filed a lawsuit against the Town of East Haven, Mayor Joseph Maturo, Chief of Police Edward Lennon, Chief of Police Brent Larrabee, Deputy Chief of Police James Naccarato, Police Sergeant Craig Michalowski, Police Sergeant Kevin Klarman, Police Officer Robert Brockett, and the East Haven Board of Police Commissioners, alleging "retaliation for speech on a matter of public concern" in violation of 42 U.S.C. § 1983, the First and Fourteenth Amendments, and the Connecticut Constitution. *Id.* ¶ 9; *Ferrara v. Maturo et al*, No. 3:17-cv-360-JCH, ECF No. 1 (Mar. 1, 2017).

On December 13, 2017, Mr. Ferrara called Defendant Ronald Suraci "to inform him that [Mr. Ferrara] was told to report for an Internal Affairs interview the following morning at 7:00 [a.m.]" *Id.* ¶ 11.

Defendants claim that Mr. Ferrara told Mr. Suraci that "an Internal Affairs Investigation had been initiated based on an email he sent using the Police Department email system to Chief Lennon soliciting business for his private company, Angel Armor." *Id.* ¶ 12 (citing Ex. 1, ECF No. 60-3 ¶ 9 (Mar. 6, 2020) ("Suraci Aff.")). Plaintiff denies this claim, alleging that Mr. Suraci was aware of the nature of the interview and Mr. Ferrara was not. Pl.'s SOF ¶ 12 (citing Ex. 1, ECF No. 48-2 ¶ 13–14 (Apr. 2, 2019) ("Ferrara Aff.")).

On December 14, 2017, Mr. Suraci "attended and represented [Mr. Ferrara] during the interview." Defs.' SOF ¶ 13.

---

[3] Both Defendants' and Plaintiff's Local Rule Statements list "Benjamin DeCrosta," *see* Defs.' SOF ¶ 8; Pl.'s SOF ¶ 8, rather than Robert DeCrosta. As there is no mention of "Benjamin DeCrosta" in the other filings, the Court will assume this inclusion was made in error and the parties intended to list the name of Robert DeCrosta.

Defendants claim that "[f]ollowing the interview, [Mr. Ferrara] and [Mr.] Suraci discussed the information provided by [Mr.] Brockett during the interview. *Id.* ¶ 14 (citing Suraci Aff. ¶ 11). Plaintiff claims that Mr. Ferrara "was not aware of the nature of allegations and [Defendant] Suraci would not explain them to him or his counsel." Pl.'s SOF ¶ 14 (citing Ferrara Aff. ¶¶ 13–118). Plaintiff further alleges that Mr. Ferrara "was ill and left" and Defendant Suraci "would not tell [Mr. Ferrara]'s counsel what the investigation concerned." *Id.* (citing Ferrara Aff. ¶¶ 13–118).

Defendants claim that Mr. Ferrara and Defendant Suraci "discussed the options that existed for [Mr. Ferrara] at that time as well as future options based on the results of the internal Affairs Investigation." Defs.' SOF ¶ 15 (citing Defs.' Ex. 1 ¶ 12). Plaintiffs allege that Mr. Suraci "provided no information and the Union did not communicate with [Mr. Ferrara] for months thereafter." Pl.'s SOF ¶ 15 (citing Ferrara Aff. ¶¶ 13–25).

On December 15, 2017, Mr. Ferrara "was suspended with pay pending the outcome of [the] Internal Affairs Investigation." Defs.' SOF ¶ 16.

The Collective Bargaining Agreement covering the term of July 1, 2012 to June 30, 2020 in Article VIII, Section 1 stated:

> [A]dministrative leave shall involve any situation involving extreme emotional distress due to work related incident, family problems, death or serious injury to fellow officer. This shall include but not be limited to a motor vehicle accident, use of firearm, use of extreme force, officer involvement and a family dispute, marital problems, separation or divorce, seriously ill or injured family number.

*Id.* ¶ 19; Ex. 5, ECF No. 60-7 at 12 (Mar. 6, 2020) ("Defs.' Ex. 5").

On February 8, 2018, Mr. Ferrara "filed a claim with the State [of Connecticut] Board of Labor Relations alleging a duty of fair representation violation against [UPSEU-COPS, Police Union Local #0275]." Defs.' SOF ¶ 20; Ex. 6, ECF No. 60-8 (Mar. 6, 2020).

An "initial conference" regarding Mr. Ferrara's complaint to the Board of Labor Relations "was scheduled on March 23, 2018 before Assistant Board Agent Jose Santana." *Id.* ¶ 21. The following attended this initial conference: Attorney James Brewster, private counsel for Mr. Ferrara; Attorney John M. Walsh Jr., Mr. Suraci, Mr. Manemeit, and Mr. DeCrosta for the UPSEU; and Attorney Stephen Sedor, Chief Lennon, and Deputy Chief Naccarato for the town. *Id.* ¶ 22.

Defendants claim that "[s]hortly after the conference began, Mr. Ferrara's counsel requested and was granted an adjournment to allow [Mr. Ferrara] to attend." *Id.* ¶ 23 (citing Suraci Aff. ¶ 19). Plaintiff claims that "[a]fter the conference began [Mr.] Suraci threatened to fight [Mr. Ferrara]'s counsel." Pl.'s SOF ¶ 23 (citing Ferrara Aff. ¶ 23 ("Mr. Suraci has shown open hostility towards me by stating that I was screwed and later I learned that [*sic*] threatened he would assault my counsel at a labor board proceeding.")).

That same day, Assistant Agent Santana sent to the parties by e-mail "three dates for the adjourned conference to resume." Defs.' SOF ¶ 24. Assistant Agent Santana "sent follow up emails to [Mr. Ferrara]'s counsel on March 29th and April 6th to reschedule the conference." *Id.* ¶ 25.

On April 6, 2018, Mr. Ferrara's counsel "informed Assistant Agent Santana that he had filed the instant suit and would not be pursuing the prohibited practice charge before the State of Connecticut Board of Labor Relations." *Id.* ¶ 26.

On April 9, 2018, UPSEU "was notified by mail that the State Board of Labor Relations had closed the case." *Id.* ¶ 27.

Defendants claim that "Defendant [Kevin] Boyle has not had any contact, conversations[,] or correspondence regarding [Mr. Ferrara] with any of the Police Defendants." *Id*. ¶ 28. Plaintiff claims this is "[i]nadmissible hearsay." Pl.'s SOF ¶ 28.

Defendants claim that "[a]ny conversations [Mr.] Suraci had related to Internal Affairs Investigation 2017-13 with Chief Lennon, Deputy Chief Naccarato[,] and Detective Brockett or anyone else associated with the Police Department regarding [Mr. Ferrara] outside of interviews or hearings, have been limited to discussing scheduling of matters related to the Internal Affairs Investigation." Defs.' SOF ¶ 29 (citing Suraci Aff. ¶ 25). Mr. Ferrara alleges that "[i]nstead of assisting Mr. Ferrara, Union Defendants, through their agents [Mr.] Suraci and [Sergeant] DeCrosta pressured [Mr. Ferrara] to abandon [his] rights, and 'just resign,' claiming dubiously that the unknown conduct would 'embarrass [him].'" Pl.'s SOF ¶ 29 (citing Ferrara Aff. ¶¶ 13– 24).

"During the course of Internal Affairs Investigation 2017-13, any contact or conversations [Mr.] Manemeit had with the Police Defendants regarding the Plaintiff was limited to discussing scheduling issues related to the Investigation and subsequent proceedings." Defs.' SOF ¶ 30.

Defendants claim that "[a]ny conversations [Sergeant] DeCrosta had with Chief Lennon, Deputy Chief Naccarato[,] and Detective Brockett or anyone else associated with the Police Department during the course of Internal Affairs Investigation 2017-13 was limited to discussing scheduling of interviews and proceedings." *Id*. ¶ 31. Plaintiff again alleges that "[i]nstead of assisting [Mr. Ferrara], Union Defendants, through their agents [Mr.] Suraci and [Sergeant] DeCrosta pressured [Mr. Ferrara] to abandon [his] rights, and 'just resign,' claiming dubiously

that the unknown conduct would 'embarrass [him].'" ." Pl.'s SOF ¶ 31 (citing Ferrara Aff. ¶¶ 13–24).

### B.  Procedural History

On March 29, 2018, Mr. Ferrara filed a Complaint against the United Public Services Employees Union, Kevin Boyle, Ronald Suraci, Craig Manemeit, Robert DeCrosta, Edward Lennon, James Naccarato, Robert Brockett, and the Town of East Haven. Compl.

On April 24, 2018, Kevin Boyle, Roberta DeCrosta, Craig Manemeit, Ronald Sucraci, and the United Public Service Employees Union filed an Answer with affirmative defenses. Answer, ECF No. 16 (Apr. 24, 2018).

On April 25, 2018, Robert Brockett, Robert DeCrosta, Edward Lennon, James Naccarato, and the Town of East Haven filed an Answer with affirmative defenses and a jury demand. Answer, ECF No. 17 (Apr. 25, 2018).

On June 19, 2018, Mr. Ferrara moved for a protective order "postponing his termination hearing." Mot. for Protective Order, ECF No. 23 at 1 (June 19, 2018).

The next day, the Court denied Mr. Ferrara's motion for a protective order because Mr. Ferrara "provide[d] no authority under Rule 26 of the Federal Rules of Civil Procedure that would allow this Court to enjoin a separate proceeding." Order, ECF No. 24 (June 20, 2018).

On February 15, 2019, Robert Brockett, Robert DeCrosta, Edward Lennon, James Naccarato, and the Town of East Haven moved for summary judgment as to Counts One and Three of the Complaint. Mot. for Summ. J., ECF No. 39 (Feb. 15, 2019) ("Police Mot. Summ. J.").

On March 5, 2019, the United Public Service Employees Union, Kevin Boyle, Ronald Suraci, Craig Manemeit, and Robert DeCrosta moved for summary judgment. Mot. for Summ. J., ECF No. 44 (Mar. 5, 2019) ("First Mot. Summ. J").

On April 2, 2019, Mr. Ferrara filed memoranda in opposition to the two motions for summary judgment. Mem. in Opp'n, ECF No. 47 (Apr. 2, 2019); Mem. in Opp'n, ECF No. 48 (Apr. 2, 2019) ("Pl.'s Mem. in Opp'n").

On August 2, 2019, in a consent motion to continue, the parties notified the Court of Mr. Ferrara's death. Consent Mot. to Continue, ECF No. 52 at 2 (Aug. 2, 2019). The Court granted the motion to continue the same day. Order, ECF No. 53 (Aug. 2, 2019).

On August 6, 2019, the Court issued an order denying the pending motions for summary judgment without prejudice to renewal. Order, ECF No. 56 (Aug. 6, 2019).

On August 29, 2019, counsel for Mr. Ferrara moved to substitute the Estate of Vincent B. Ferrara as plaintiff. Mot. to Substitute Party, ECF No. 58 (Aug. 29, 2019).

On October 21, 2019, the Court granted Plaintiff's motion to substitute party, substituting the Estate of Vincent Ferrara, administered by Cheryl Ferrara, as the plaintiff. Order, ECF No. 59 (Oct. 21, 2019).

On March 6, 2020, Kevin Boyle, Robert DeCrosta, Craig Manemeit, Ronald Suraci, and United Public Service Employees Union again moved for summary judgment. Defs.' Mot.

On March 10, 2020, Plaintiff moved to renew its opposition memorandum, Pl.'s Mem. in Opp'n, from the first motion for summary judgment for the second motion for summary judgment. Mot. to Renew.

On May 21, 2020, Plaintiff filed a stipulation of dismissal as to Robert DeCrosta, Edward Lennon, James Naccarato, Robert Brockett, and the Town of East Haven. Stipulation of Dismissal.

On November 17, 2020, the Court held oral argument on the Defendants' motion for summary judgment. Min. Entry, ECF No. 64 (Nov. 17, 2020). The same day, the Court granted Plaintiff leave to file supplemental briefing. Order, ECF No. 65 (Nov. 17, 2020).

On December 1, 2020, Plaintiff filed a supplemental memorandum. Pl.'s Suppl. Mem. in Opp'n to Defs.' Mot. for Summ. J., ECF No. 66 (Dec. 1, 2020) ("Pl.'s Suppl.")

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.") (internal quotation marks omitted)). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *4 (D. Conn. Mar. 2, 2007) ("A court must grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." (internal quotation marks omitted)). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., LLC. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Two claims remain in this case: (1) a First Amendment retaliation claim; and (2) a breach of the duty to fair representation claim. The Court will address each of these claims in turn.

### A.  The First Amendment Retaliation Claim

"The Supreme Court has long recognized that the First Amendment affords a degree of protection to public employees to exercise the right of free speech without risk of retaliation by the State employer if the employee's speech in question is on matters of public interest." *Lynch v. Ackley,* 811 F.3d 569, 577 (2d Cir. 2016) (citing *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563, 568 (1968)) (internal quotation marks omitted). "At the same time, however, the State has interests as an employer in regulating the speech of its employees

that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.* (internal quotation marks omitted).

"A plaintiff asserting a First Amendment retaliation claim must establish that: '(1) his speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech.'" *Matthews v. City of N.Y.*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.,* 654 F.3d 267, 272 (2d Cir. 2011).

> [T]wo inquiries . . . guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citations omitted).

First Amendment retaliation claims are brought against a state or state actor. *See Lynch,* 811 F.3d at 577 (noting "public employees' . . . right of free speech without risk of retaliation by the State employer"). A First Amendment retaliation claim may be brought against a private entity if a conspiracy exists between the private entity and a state actor. *See, e.g.*, *Lynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 354–55 (E.D.N.Y. 2013) (finding a claim involving a retaliation conspiracy between a town and a private organization could survive summary judgment).

> To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The Second Circuit has "recognized that . . . 'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Id.* (quoting *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir. 1994)). "[D]iffuse and expansive allegations" of conspiracy, however, are also "insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. County of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002).

And the state actor in the alleged conspiracy must be a defendant to sustain a First Amendment retaliation claim. *Cf. Southampton Animal Shelter*, 971 F. Supp. 2d at 342 (declining to grant summary judgment for a § 1983 conspiracy claim related to a conspiracy between a private entity and a state actor where the state actors was also named defendants); *Mercer v. Schriro,* 337 F. Supp. 3d 109, 117 (D. Conn. 2018) (declining to dismiss at the pleading stage a § 1983 conspiracy claim related to an alleged conspiracy between the state and a union where both state actors, the union, and union employees were named as defendants); *Phoenix v. Reddish,* 175 F. Supp. 2d 215, 216 (D. Conn. 2001) (granting summary judgment as to a § 1983 conspiracy claim where the private entity and state actor were named as defendants).

After the Stipulation of Dismissal dismissed the Police Defendants from the action, the United Public Service Employees Union, Kevin Boyle, Ronald Suraci, and Craig Manemeit remained as defendants. *See* Stipulation of Dismissal at 1 (dismissing Robert DeCrosta and the other Police Defendants). None of the remaining defendants, however, is a state employee or state actor. *See* Defs.' SOF ¶¶ 2, 4–7 (establishing UPSEU as a labor organization and Kevin Boyle, Ronald Suraci, and Craig Manemeit as the president, executive director, and staff attorney of UPSEU, respectively); Pl.'s SOF ¶¶ 2, 4–7 (same).

At oral argument, the Court raised this issue and Plaintiff argued that the state actor in the alleged conspiracy did not need to be an active defendant for the retaliation claim to continue. Min Entry; *see also* Pl.'s Mem. in Opp'n at 10–11. The Court then gave Plaintiff leave to file supplemental briefing to address whether the First Amendment retaliation claim may continue against the remaining defendants as a private entity and private citizens through a conspiracy with a state actor without a state actor as an active defendant, Order, ECF No. 65.

In its supplemental briefing, Plaintiff argues for the continuance of the First Amendment retaliation claim against "a private actor when the state actor is no longer in the case." Pl.'s Suppl. at 3. Rather than address "what happens when the government actor is removed from the case," Plaintiff contends that "what really matters is <u>how</u> the government actor is removed" from the case. *Id.* at 4 (emphasis in original). As Plaintiff argues:

> [A] finding that the government actor was not liable would impact the section 1983 claim against the private actor. While not directly controlling, *Hughes* leans toward an analysis that looks at the totality of the circumstances when determining jurisdiction and liability. In this case, the jury could be proffered evidence of the Town of East Haven defendants' First Amendment retaliation (even if the claim against them has been dismissed) and evidence of the Union defendants' working in concert with them to achieve that retaliation. The plaintiff's claims against the Union defendants are therefore viable . . .

*Id.* (citing *Hughes v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.,* 850 F.2d 876, 881 (2d Cir. 1988) (holding on appeal that the jury's amended verdict finding that the state actors were not liable to the plaintiff or did not act under the color of state law did not "affect the sufficiency of the complaint")). Plaintiff seemingly argues that the fact that the state actors were voluntarily dismissed from this action should not affect the First Amendment retaliation claim against the private actors. *Id.* at 4–5.

The decision in *Hughes*, however, does not address the issue of whether a claim may continue without any state actors as active defendants. In *Hughes*, the City of New York and its police department were defendants, *see* 859 F.2d at 879-80, and no state actor had been dismissed, voluntarily or involuntarily.

It does matter "what happens when the government actor is removed from the case." Pl.'s Suppl. at 4. As the discussed above, the First Amendment protects a "public employee[']s . . . right of free speech without risk of retaliation by the State employer.*" Lynch*, 811 F.3d at 577. While a private actor can be implicated in a First Amendment retaliation case when conspiring with a state actor, the state actor is essential to such a claim. *See Deskovic v. City of Peekskill*, 894 F. Supp. 2d 443, 465 (S.D.N.Y. 2012) ("A Section 1983 conspiracy claim requires . . . an agreement between two or more state actors or between a state actor and a private entity . . . ."). Plaintiff has failed to cite a single case in which a First Amendment retaliation claim proceeds against a private actor without a state actor co-defendant.

Even if the claim were allowed to continue without state actors as defendants, the claim would fail otherwise because the Plaintiff has not demonstrated beyond "conclusory allegations," *Robinson*, 781 F.3d at 44, that the Union Defendants conspired with the Police Defendants or even that the Union Defendants were involved in the events challenged by the First Amendment retaliation claim. *See* Pl.'s Suppl. at 2.

Plaintiff first claims that it "has established a prima facie case of retaliation" and that "[w]hether speech is protected under the First Amendment is a question of law for the court to determine." Pl.'s Mem. in Opp'n at 10. Plaintiff further argues that "[c]onspiracy [is] not [n]eeded for [a] First Amendment [retaliation] [c]laim." *Id.* Plaintiff argues:

> Union Defendants argue that plaintiff cannot prove a conspiracy to violate his First Amendment Petition Clause right against

> retaliation.[] However, there is evidence that [Police Chief] Lennon, [Deputy Chief of Police] Naccarato and [Officer] Brockett conspired with [Detective] Decrosta and [Executive Director] [Suraci] . . . to force plaintiff from his position after the hastily conducted and unnoticed [Internal Affairs investigation]. Suraci and Brockett worked to deprive plaintiff of his rights to union representation at the IA interview December 14, 2017, when plaintiff was seriou[sly] ill. This interview forms the basis for the charges against plaintiff for dishonesty that Lennon then duplicit[ously] used to suspend and then recommend plaintiff be terminated. There is a material factual dispute as to whether [P]laintiff lied at this interview, especially given his incompetency, at the time, to provide any statement. The interview was invalid and the supposed lies suspect.

*Id.* at 10–11. In its initial briefing, Plaintiff does not directly cite anything in the record to substantiate these claims.

In its supplemental briefing, Plaintiff reasserts that the Union Defendants "acted under color of law of the Constitution" and "conspired with Town of East Haven defendants to retaliate against [P]laintiff for bringing his [previous] lawsuit." Pl.'s Suppl. at 1–2. As Plaintiff argues, "[t]he Second Circuit has held that constitutional claims against a private actor are actionable under Section 1983 if the private entity acted in concert with the state actor." *Id.* at 2 (citing *Ciambriello,* 292 F. 3d at 323).

Plaintiff argues that it "satisfied this standard when it submitted sufficient material facts in dispute that Union [D]efendants worked in concert with Town of East Haven defendants to retaliate against plaintiff." *Id.* (citing Compl. ¶ 24). Plaintiff points to its Local Rule 56(a)(2) Statement as evidence of the conspiracy. *Id.* (citing Pl.'s SOF ¶¶ 12–16, 17, 23). These paragraphs rely on Mr. Ferrara's affidavit and describe the events that transpired around the interview with Internal Affairs and the alleged altercation at the State Board of Labor Relations conference. *See* Pl.'s SOF ¶¶ 12–16, 23; Ferrara Aff. ¶¶ 13–25.

16

Plaintiff then argues that "[t]he question of liability for [the Union Defendants] working under the color of law is a material fact in dispute," Pl.'s Suppl. at 3, and "that the Union [D]efendants 'acted in concert with the Town of East Haven defendants to commit an unconstitutional act.'" *Id.* (citing *Spear v. Town of West Hartford,* 954 F. 2d 63, 68 (2d Cir. 1992)) (alteration omitted).

The Court disagrees.

First, Plaintiff only presents "diffuse and expansive allegations" of conspiracy, *Ciambriello,* 292 F.3d at 325 (internal quotation marks omitted), rather than any direct or even circumstantial evidence, *see Pangburn*, 200 F.3d at 72 ( recognizing "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." (internal quotation marks omitted). Mr. Ferrara's affidavit does not offer any evidence of a conspiracy between the Union Defendants and the Police Defendants, but instead simply underscores the Union's alleged antipathy towards him. For example, Mr. Ferrara stated, "I demanded that the union file a grievance . . . and . . . fairly represent me, especially regarding the basis for the suspension, which was ignored." Ferrara Aff. ¶ 14. He also stated that "[Mr.] Suraci has shown open hostility towards me by stating that I was screwed and later I learned that [he] threatened he would assault my counsel at a labor board proceeding." *Id.* ¶ 23.

But negative interactions with the Union Defendants do not amount to a genuine issue of material fact of a conspiracy between the Union Defendants and the Police Defendants to deprive Mr. Ferrara of a constitutional right, *see Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."), nor can it support a finding that there was "(1) an agreement between . . . a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and

(3) an overt act done in furtherance of that goal causing damages," *Pangburn*, 200 F.3d at 72. No reasonable jury could find for Plaintiff based on that evidence.

Indeed, Plaintiff's First Amendment retaliation claim lacks a clear connection between the actions of the Union Defendants and the Police Defendants. Plaintiff alleges that the Police Defendants "engaged in a pattern of retaliation for [Mr. Ferrara's] bringing [his first] lawsuit," which included "illegitimate investigations, false rumors of misconduct by [Mr. Ferrara], unauthorized personnel actions, fabricated investigations, suspensions[,] and improper administrative leave." Compl. ¶ 21. Plaintiff then alleges that the Union Defendants "conspired with the Police Defendants to retaliate against [Mr. Ferrara] for bringing his lawsuit," *Id.* ¶ 24. Even accepting as true everything in Plaintiff's filings, the retaliation by the Police Defendants – the investigation, suspension, and administrative leave – that could be challenged by a First Amendment retaliation claim does not include any action by the Union Defendants. As a result, the Union Defendants alleged failings in their representation of Mr. Ferrara do not contribute to the alleged retaliation by the Police Defendants.

Put differently, the Union Defendants and the Police Defendants cannot be said to have acted "in concert," *Pangburn*, 200 F.3d at 72, because the Union Defendants' actions had no effect on the Police Defendants' retaliation, at least on this record, as described by Plaintiff. The Union Defendants did not become involved in the matter until Mr. Ferrara's interview with Internal Affairs on December 13, 2017, Pl.'s SOF ¶ 11, after the allegedly illegitimate investigation and false rumors, and only two days before Mr. Ferrara was put on administrative leave, Defs.' SOF ¶ 18. Plaintiff has presented no evidence to indicate that the Union Defendants had any involvement that could or would contribute to the Police Defendants' allegedly retaliatory actions.

The salient issue is not whether the Union Defendants mistreated Mr. Ferrara, but whether they conspired with the Police Defendants to violate Mr. Ferrara's First Amendment rights. *See Pangburn,* 200 F.3d at 72 ("To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."). Without admissible evidence as to that issue, the Union Defendants' alleged mistreatment of Mr. Ferrara only suggests a failure to represent Mr. Ferrara adequately, rather than a conspiracy with the Police Defendants to retaliate against him for exercising his First Amendment rights, allegations raised and perhaps better addressed by Mr. Ferrara's breach of duty of fair representation claim, or a retaliation claim against the Union Defendants alone, unrelated to the constitutional claim brought here. Nothing, however, in this record creates a genuine issue of material fact as to Mr. Ferrara's First Amendment retaliation claim, in the absence of any state actors.

Accordingly, Defendants' motion for summary judgment as to the First Amendment retaliation claim will be granted.

## B. Supplemental Jurisdiction

Having determined that Plaintiff's remaining federal claim should be dismissed, the Court then must determine whether it should exercise supplemental jurisdiction over the remaining state law claim.

Under 28 U.S.C. § 1367(a),

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122; *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-

law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.")

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen §1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. The Court finds that principles of comity suggest that Connecticut courts are more suited to determine the viability of Plaintiff's breach of duty of fair representation claim, which involves Connecticut law. Plaintiff's "claims may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss Plaintiff's breach of duty of fair representation claim without prejudice as a result.

## V.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**.

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of December, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE